**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HALSEY A. JACKSON,

Plaintiff,

v.

834 DESIGN & MARKETING, LLC, d/b/a 8THIRTYFOUR and 8THIRTYFOUR INTEGRATED COMMUNICATIONS, and KIMBERLY BODE,

Defendants.
_______________________________________/

Case No. __________________

Hon. ____________________

**COMPLAINT AND JURY DEMAND**

Plaintiff Halsey A. Jackson, by and through her attorneys, Avanti Law Group, PLLC, for her Complaint against Defendants 834 Design & Marketing, LLC, d/b/a 8THIRTYFOUR and 8THIRTYFOUR Integrated Communications ("8THIRTYFOUR"), and Kimberly Bode ("Bode") (together, "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. This is an action for pregnancy discrimination. 8THIRTYFOUR recruited Plaintiff and, on October 14, 2025, sent her a written offer of employment as its Marketing Associate at $22.00 per hour. That same day, Plaintiff told 8THIRTYFOUR that she was expecting a baby in late December. 8THIRTYFOUR did not respond for six days. On October 20, 2025, it told Plaintiff that it was "restructuring" and offered her, in place of the employment position, an interim independent-contractor arrangement at $25.00 per hour, without benefits and without a set schedule. 8THIRTYFOUR never placed Plaintiff in the position.

2. On January 20, 2026, less than three months after Plaintiff gave birth, 8THIRTYFOUR ended the contractor arrangement effective immediately, without the thirty

days' written notice its own agreement required, and it has not paid Plaintiff for all of the hours she worked.

3. Plaintiff brings claims for sex discrimination on the basis of pregnancy under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e et seq. (Count I, against 8THIRTYFOUR); under the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. (Counts II and III, against both Defendants); and for breach of contract (Count IV, against 8THIRTYFOUR).

**PARTIES**

4. Plaintiff Halsey A. Jackson is an adult individual who resides in Grand Rapids, Kent County, Michigan.

5. Defendant 834 Design & Marketing, LLC is a limited liability company with its principal place of business at 1365 Plainfield Avenue NE, Grand Rapids, Michigan 49505. It does business as "8THIRTYFOUR" and, on information and belief, as "8THIRTYFOUR Integrated Communications." 8THIRTYFOUR is a communications and marketing firm.

6. Defendant Kimberly Bode is the Chief Executive Officer and founder of 8THIRTYFOUR. At all times relevant to this Complaint, Bode conducted 8THIRTYFOUR's business in Kent County, Michigan.

7. 8THIRTYFOUR has stated that Bode "approved the decisions" concerning Plaintiff that are described in this Complaint. At all relevant times, Bode acted as an agent of 8THIRTYFOUR with authority over hiring, compensation, and the engagement of workers. 8THIRTYFOUR's payroll system identified Bode as Plaintiff's manager.

8. 8THIRTYFOUR is an “employer” within the meaning of the Elliott-Larsen Civil Rights Act because it has one or more employees. MCL 37.2201(a). Bode, as an agent of 8THIRTYFOUR, is also an “employer” within the meaning of that Act. Id.

9. On information and belief, 8THIRTYFOUR is a person engaged in an industry affecting commerce that had fifteen or more employees for each working day in each of twenty or more calendar weeks in calendar year 2024 or 2025, and is therefore an “employer” within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff’s Title VII claim under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

11. This Court has supplemental jurisdiction over Plaintiff’s state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the Title VII claim that they form part of the same case or controversy under Article III of the United States Constitution.

12. This Court has personal jurisdiction over Defendants. 8THIRTYFOUR maintains its principal place of business in Grand Rapids, Michigan, and the acts and omissions alleged in this Complaint were committed in Michigan.

13. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged were committed in Michigan, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff’s claims occurred in this District.

14. The claims arose in Kent County, Michigan, which lies within the Southern Division of this District.

## ADMINISTRATIVE PROCEEDINGS

15. On June 8, 2026, Plaintiff signed a Charge of Discrimination against "834 Design & Marketing 8THIRTYFOUR Integrated Communications," Michigan Department of Civil Rights Complaint No. 666982, which was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") as EEOC Charge No. 23A-2026-01113 (the "Charge").

16. The Charge alleged discrimination because of sex (pregnancy) in the failure to hire on October 20, 2025, and in discharge and other terms and conditions on January 20, 2026.

17. The Charge was filed within 300 days after October 20, 2025, and within 300 days after January 20, 2026.

18. On August 3, 2026, the EEOC issued a Determination and Notice of Rights on the Charge. Plaintiff received the Determination and Notice of Rights through the EEOC Public Portal on August 3, 2026.

19. Plaintiff files this Complaint within 90 days after she received the Determination and Notice of Rights. Plaintiff has satisfied all administrative prerequisites to her Title VII claim.

## FACTUAL ALLEGATIONS

### A. 8THIRTYFOUR Recruits Plaintiff for Its Marketing Associate Position

20. Plaintiff is a marketing and communications professional.

21. On September 19, 2025, 8THIRTYFOUR's Digital Director, Rowan Leo, emailed Plaintiff: "I was wondering if you'd be open to interviewing for a potential full-time position with our team."

22. On September 22, 2025, Plaintiff responded that she was "very excited about the possibility of joining the 8thirtyfour team," and that she was available part-time until the new year and could transition to a full-time role after that. On September 26, 2025, Leo replied: "We

could definitely make that work," and stated that the job description would be updated "to reflect a potential part-time status (at least to start)."

23. Leo sent Plaintiff 8THIRTYFOUR's written job description for the Marketing Associate position. It described a part-time position of 25 to 30 hours per week, reporting to the Digital Director, at $22 per hour. It listed the position's primary responsibilities as content creation, social media, public-relations support, event assistance, and digital marketing.

24. On October 7, 2025, Plaintiff interviewed for the position with Lane Clark of Lane Clark Consulting, whom Leo had identified as the person "who will be handling the initial interview." The interview was conducted virtually.

25. On October 8, 2025, Clark asked Plaintiff for her available start date, and Plaintiff responded that she could start by October 22, 2025.

**B. 8THIRTYFOUR Offers Plaintiff the Position in Writing**

26. On the morning of October 14, 2025, Leo emailed Plaintiff, copying Bode: "We're pumped to officially offer you a spot on the 8THIRTYFOUR team as our new Marketing Associate!" Leo attached a written offer letter.

27. The offer letter stated that Plaintiff's start date would be November 3, 2025, and that the position "comes with a starting pay of $22/hour at 25-30 hours/week, subject to standard taxes and withholdings." It stated that 8THIRTYFOUR would "determine a set schedule for these hours once the offer is accepted."

28. The offer letter stated that the offer was "contingent on the successful completion of a background check." 8THIRTYFOUR has never identified any background-check issue as a reason for any decision concerning Plaintiff.

29. The offer letter also stated: "We encourage every team member to plan for a minimum two-year commitment with 8THIRTYFOUR."

30. Plaintiff was qualified for the Marketing Associate position. 8THIRTYFOUR sought her out for it, interviewed her, and offered it to her in writing.

### C. Plaintiff Discloses Her Pregnancy the Same Day

31. At 12:05 p.m. on October 14, 2025, Plaintiff replied to Leo, copying Bode. She wrote that she was "thrilled at the idea of joining the team," asked for an overview of the benefits that would apply to the position, and asked whether 8THIRTYFOUR would consider pay "in the range of $24 per hour."

32. In the same email, Plaintiff disclosed her pregnancy: "I wanted to share that I am expecting a baby in late December." She wrote that she planned to continue working "up until my due date," that "[a] start date of November 3 sounds great," and that her thought was "to take a short unpaid leave and return once I'm ready." She added: "I'm happy to discuss what would work best for the team and ensure a smooth transition during that time."

33. Plaintiff had not previously disclosed her pregnancy to 8THIRTYFOUR.

### D. Six Days Later, 8THIRTYFOUR Declines to Employ Plaintiff and Offers Contract Work Instead

34. No one from 8THIRTYFOUR responded to Plaintiff's October 14, 2025 email until October 20, 2025.

35. On October 20, 2025, at 11:44 a.m., Leo emailed Plaintiff, copying Bode and Clark: "We've had a couple changes internally, so we're restructuring and bringing on a new operations manager. Until that happens, we'd love to bring you on as a contractor in the [interim] at $25/hour. If you're open to that, let me know, and I'll connect you with Maddie for your first assignment. We'd love to get started right away."

36. The October 20, 2025 email did not answer Plaintiff's questions about benefits, pay, or leave, and did not identify any concern about Plaintiff's qualifications.

37. The contractor rate of $25.00 per hour was higher than both the $22.00 per hour that 8THIRTYFOUR had offered and the $24.00 per hour that Plaintiff had asked about. The contractor arrangement carried no benefits, no set schedule, and no minimum number of hours.

38. At 12:11 p.m. on October 20, 2025, Plaintiff replied: "That sounds great. I'm available to get started whenever needed and happy to join any calls or in-person meetings as necessary. I'd also love to revisit the conversation about officially joining the team in the future."

39. At 12:15 p.m., Bode replied to Plaintiff, copying Leo and Clark: "Welcome!"

40. 8THIRTYFOUR has since stated that, because of its restructuring, it "decided not to fill the Marketing Associate position."

41. 8THIRTYFOUR has identified the operations hire as an Operations Director whose first day was January 12, 2026. A payroll record that 8THIRTYFOUR submitted to the EEOC reflects that Lisa Young became a salaried employee of 8THIRTYFOUR at $120,000.00 per year, effective January 12, 2026.

42. 8THIRTYFOUR never placed Plaintiff in the Marketing Associate position or in any other position that it treated as employment.

**E. The Contractor Arrangement**

43. On October 21, 2025, Leo wrote to Plaintiff: "Maddie will be reaching out shortly with information on your first project!"

44. Plaintiff and 8THIRTYFOUR, identified as "8THIRTYFOUR Integrated Communications," entered into a written agreement dated as of November 4, 2025 (the "Agreement"). Bode signed the Agreement for 8THIRTYFOUR as its CEO.

45. The Agreement provided that 8THIRTYFOUR would pay Plaintiff "the agreed-upon hourly rate of $25, bi-weekly." It described Plaintiff as "an independent contractor, not an employee."

46. Under the heading "Termination," the Agreement provided: "Without Cause: Either party may terminate the agreement with 30 days' written notice." It separately provided: "For Cause: Immediate termination is allowed for material breaches that are not remedied within 10 days."

47. Plaintiff gave birth to her son on or about November 7, 2025.

48. On December 29, 2025, Leo emailed Plaintiff, copying Bode, that 8THIRTYFOUR had "a client who needs help with managing their social media accounts," and asked for a quote. 8THIRTYFOUR has identified the client as the YMCA of Greater Grand Rapids.

49. On December 30, 2025, Leo described the work: drafting posts from a pre-determined content calendar, posting once per day per platform with one to two stories each day, creating graphics from Canva templates and existing photos, and responding to comments and messages. Plaintiff estimated that the work would take 10 to 12 hours per week.

50. Leo told Plaintiff that 8THIRTYFOUR would have her "record hours through Gusto," 8THIRTYFOUR's payroll system, and added her to 8THIRTYFOUR's project-management system. On January 9, 2026, Leo gave Plaintiff access to the client's Facebook Business account, 8THIRTYFOUR's Publer scheduling account, Canva templates, and an asset folder, and directed her to "draft the Tuesday and Wednesday posts for me to review on Monday," after which she would "start drafting out a week at a time until we get to our rhythm of being scheduled three weeks in advance."

51. 8THIRTYFOUR reviewed Plaintiff's work before it was published. As Leo explained, Plaintiff would submit content in Publer "and then we either approve or leave comments right in the platform."

52. Beginning January 13, 2026, Maddie Odle, 8THIRTYFOUR's Public Relations & Events Manager, reviewed and commented on Plaintiff's drafts; directed that Plaintiff avoid emojis and change default posting times; instructed Plaintiff "NOT to respond to any [comments] on that thread about the sign, or any messages about it"; required Plaintiff to notify Odle, Leo, and Lisa Young by email of "all updates on the GRYMCA social scheduling and future projects"; and set up recurring weekly check-in meetings with Plaintiff.

53. Plaintiff performed the work. Between January 12 and January 20, 2026, she drafted and revised posts in Publer and responded to 8THIRTYFOUR's feedback, including completing two construction-related posts that Odle asked on January 19, 2026 to have "done by EOD."

54. At no time did 8THIRTYFOUR identify any deficiency in Plaintiff's performance as a reason for any decision concerning her.

**F. 8THIRTYFOUR Ends the Arrangement Without Notice and Does Not Pay for All Hours Worked**

55. On January 19, 2026, at 5:17 p.m., Plaintiff wrote to Odle, copying Leo: "I wanted to see if you'd be able to unlock things on my end in gusto. It has them as 'already paid' for today, but I haven't been able to submit what I have worked on."

56. Earlier on January 19, 2026, Odle had sent Plaintiff the content calendar for "the next two weeks." At 6:16 p.m. that evening, Odle asked Plaintiff to "let me know when the rest of the week will be ready for review."

57. On January 20, 2026, at 11:45 a.m., Plaintiff wrote to Odle that she was "working through them now," and followed up "on the gusto question I had so I can log my hours."

58. Ten minutes later, at 11:55 a.m., Odle wrote to Plaintiff, copying Leo: "I'm reaching out to let you know that we've decided to end our social media scheduling contracting

partnership for GRYMCA, effective today. You will be paid for the work you've already reported in Gusto."

59. At 12:04 p.m., Plaintiff replied: "Oh okay, thanks for letting me know. I've just added my hours from yesterday and today into gusto. Will there be new projects for me in the meantime? Would love to chat more on this."

60. At 12:08 p.m., Odle canceled the weekly check-in meeting that 8THIRTYFOUR had scheduled with Plaintiff for January 21, 2026.

61. 8THIRTYFOUR did not give Plaintiff thirty days' written notice before ending the Agreement, and it did not identify any breach of the Agreement by Plaintiff.

62. On January 20 and January 23, 2026, Plaintiff wrote to Leo and Bode asking whether there were other projects she could assist with. On January 28, 2026, Leo replied, copying Bode: "At the moment, we don't have any other projects that require your help, but we'll let you know if that changes."

63. On information and belief, 8THIRTYFOUR continued to provide social-media services to the YMCA of Greater Grand Rapids after January 20, 2026.

64. On January 23, 2026, 8THIRTYFOUR paid Plaintiff $141.68, reflecting 5.667 hours at $25.00 per hour, with the memo "For hours worked Dec 28, 2025 – Jan 19, 2026."

65. 8THIRTYFOUR has not paid Plaintiff for the hours she entered into Gusto on January 20, 2026, for work she performed on January 19 and January 20, 2026.

66. On April 24, 2026, after Plaintiff asked 8THIRTYFOUR to confirm that all hours worked through her end date had been processed, Bode responded: "You are not an active contractor in our system. You were paid for the hours you entered into Gusto."

67. Plaintiff replied the same day that she had been paid only through January 19 and that on January 20 she had entered hours from that day and the day before. On April 27, 2026, Bode responded: "Halsey, your email says nothing about entering more hours. It says you entered the hours. Any hours entered into Gusto were paid, and they line up with the bi-weekly payroll. This is also the first you've mentioned being owed more money, which I find very odd."

68. Plaintiff's January 20, 2026 email stated that she had "just added my hours from yesterday and today into gusto."

69. In a position statement submitted to the EEOC on July 20, 2026, 8THIRTYFOUR stated that a review of Plaintiff's payroll records "turned up one time entry she submitted on January 20, her last day that had not been paid," and that it was "working with Gusto to process payment for that one entry now."

70. As of the filing of this Complaint, 8THIRTYFOUR has not paid Plaintiff for that time entry or for any other hours she worked on January 19 and January 20, 2026.

## G. 8THIRTYFOUR Adds Personnel After Telling Plaintiff It Had No Work for Her

71. Abby Wettlaufer's public professional profile lists her as a Public Relations Associate at 8THIRTYFOUR, in a position she describes as an internship, beginning in February 2026. Public-relations support was a listed primary responsibility of the Marketing Associate position. On information and belief, Wettlaufer performs public-relations support work of the kind the Marketing Associate position was to perform.

72. Marina Maskaykina has publicly announced that she joined 8THIRTYFOUR as its Creative Lead. On information and belief, she joined in or about early 2026.

73. 8THIRTYFOUR did not offer Plaintiff either position or any other employment.

**H. Plaintiff's Pregnancy Was a Motivating Factor in 8THIRTYFOUR's Decisions**

74. 8THIRTYFOUR decided not to employ Plaintiff within six days after she disclosed her pregnancy and her anticipated leave, and after it had recruited her, interviewed her, and offered her the position in writing.

75. 8THIRTYFOUR's stated reason, restructuring and the addition of an operations manager, does not explain its decision. 8THIRTYFOUR declined to employ Plaintiff at $22.00 per hour while offering to pay her more, $25.00 per hour, to perform marketing work as a contractor, and while hiring an Operations Director.

76. The October 20, 2025 email described the contractor arrangement as an interim measure "[u]ntil" the operations hire was made. After that hire began work on January 12, 2026, 8THIRTYFOUR did not offer Plaintiff the Marketing Associate position. Instead, eight days later, it ended her contractor arrangement effective immediately, and it told her on January 28, 2026 that it had no other projects that required her help.

77. 8THIRTYFOUR has never identified any concern about Plaintiff's qualifications or performance as a reason for any decision concerning her.

78. 8THIRTYFOUR's stated reasons are a pretext for discrimination. Plaintiff's pregnancy was a motivating factor in 8THIRTYFOUR's decision not to employ her, and Plaintiff's sex, including her pregnancy and childbirth, was a factor that made a difference in Defendants' decisions to end her engagement and to refuse her further work.

**I. Plaintiff's Damages**

79. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered economic loss, including the wages and benefits she would have earned in the Marketing Associate position, lost earnings under the Agreement, and unpaid compensation for hours she worked.

80. As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered emotional distress, anxiety, humiliation, and embarrassment, for which she has sought medical and therapeutic care.

**COUNT I**

**SEX DISCRIMINATION (PREGNANCY) — FAILURE TO HIRE**

**TITLE VII, 42 U.S.C. § 2000e et seq.**

**(Against 8THIRTYFOUR)**

81. Plaintiff incorporates by reference paragraphs 1 through 80 of this Complaint.

82. Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

83. Under the Pregnancy Discrimination Act, discrimination "because of sex" includes discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k).

84. An unlawful employment practice is established when sex was a motivating factor for any employment practice, even though other factors also motivated the practice. 42 U.S.C. § 2000e-2(m).

85. Plaintiff was pregnant when she applied for, and was offered, the Marketing Associate position, and 8THIRTYFOUR knew she was pregnant when it decided not to employ her.

86. Plaintiff was qualified for the Marketing Associate position.

87. 8THIRTYFOUR failed and refused to hire Plaintiff for the Marketing Associate position, and instead offered her only a contractor arrangement without the benefits, schedule, or stability of employment.

88. Plaintiff's pregnancy was a motivating factor in 8THIRTYFOUR's decision. 8THIRTYFOUR's stated reasons are pretextual.

89. As a direct and proximate result of 8THIRTYFOUR's unlawful discrimination, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost wages and benefits, lost earning capacity, emotional distress, humiliation, and embarrassment.

90. 8THIRTYFOUR engaged in intentional discrimination with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a(b)(1).

**COUNT II**

**SEX DISCRIMINATION (PREGNANCY) — FAILURE TO HIRE**

**ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq.**

**(Against 8THIRTYFOUR and Bode)**

91. Plaintiff incorporates by reference paragraphs 1 through 80 of this Complaint.

92. The Elliott-Larsen Civil Rights Act prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of sex. MCL 37.2202(1)(a).

93. Under the Act, "sex" includes, but is not limited to, pregnancy, childbirth, the termination of a pregnancy, or a related medical condition. MCL 37.2201(d). The Act also prohibits an employer from treating an individual affected by pregnancy, childbirth, the

termination of a pregnancy, or a related medical condition differently for any employment-related purpose from another individual who is not so affected but similar in ability or inability to work. MCL 37.2202(1)(d).

94. 8THIRTYFOUR and Bode are each an "employer" under the Act. MCL 37.2201(a).

95. Defendants failed and refused to hire Plaintiff for the Marketing Associate position because of her sex, including her pregnancy, and treated her differently for an employment-related purpose because she was affected by pregnancy.

96. Bode approved the decision not to employ Plaintiff.

97. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost wages and benefits, lost earning capacity, emotional distress, humiliation, and embarrassment.

## COUNT III

## SEX DISCRIMINATION (PREGNANCY AND CHILDBIRTH) — TERMINATION AND TERMS AND CONDITIONS

## ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq.

**(Against 8THIRTYFOUR and Bode)**

98. Plaintiff incorporates by reference paragraphs 1 through 80 and 92 through 94 of this Complaint.

99. 8THIRTYFOUR affected and controlled the terms, conditions, and privileges of Plaintiff's work. 8THIRTYFOUR assigned the work, set its deadlines and review schedule, reviewed and approved her work before publication, directed how she was to perform it, required her to report to its managers by email, set up weekly check-in meetings with her, set her rate of

pay, controlled the payroll system through which her hours were recorded and paid, and decided whether her engagement would continue.

100. In the alternative, Plaintiff was 8THIRTYFOUR's employee within the meaning of the Act.

101. On January 20, 2026, Defendants ended Plaintiff's engagement effective immediately. On January 28, 2026, Defendants refused her further work. Defendants have not paid Plaintiff for all hours she worked.

102. Defendants took these actions because of Plaintiff's sex, including her pregnancy and childbirth.

103. Bode approved the decisions concerning Plaintiff, including the decision to end her engagement, and in April 2026 personally rejected Plaintiff's requests for payment of her unpaid hours.

104. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost earnings, unpaid compensation, emotional distress, humiliation, and embarrassment.

**COUNT IV**

**BREACH OF CONTRACT**

**(Against 8THIRTYFOUR)**

105. Plaintiff incorporates by reference paragraphs 1 through 80 of this Complaint.

106. The Agreement is a valid and enforceable contract between Plaintiff and 8THIRTYFOUR.

107. Plaintiff performed her obligations under the Agreement.

108. 8THIRTYFOUR breached the Agreement by failing to pay Plaintiff at the agreed rate of $25.00 per hour for all hours she worked, including the hours she worked on January 19 and January 20, 2026.

109. The services under the Agreement had not been completed when 8THIRTYFOUR ended it. 8THIRTYFOUR further breached the Agreement by terminating it without cause and without the thirty days' written notice that the Agreement required.

110. As a direct and proximate result of 8THIRTYFOUR's breaches, Plaintiff has been damaged in an amount to be proven at trial, including unpaid compensation for hours worked and the compensation she would have earned during the required notice period, together with interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Halsey A. Jackson respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

A. On Counts I, II, and III, back pay and lost benefits, and front pay or instatement, in an amount to be proven at trial;

B. On Counts I, II, and III, compensatory damages for emotional distress, humiliation, embarrassment, and other non-economic harm;

C. On Count I, punitive damages against 8THIRTYFOUR under 42 U.S.C. § 1981a(b)(1);

D. On Count IV, contract damages against 8THIRTYFOUR, including unpaid compensation and compensation for the required notice period;

E. Pre-judgment and post-judgment interest as allowed by law;

F. Costs and reasonable attorney fees under 42 U.S.C. § 2000e-5(k) and MCL 37.2802; and

G. Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

AVANTI LAW GROUP, PLLC

Dated: October 29, 2026

By: */s/ Robert Anthony Alvarez Sr.*
Robert Anthony Alvarez Sr. (P66954)
Avanti Law Group, PLLC
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com
Attorney for Plaintiff

# VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Date: 10/25/2026

/s/

Halsey Jackson

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/03/2026

**To:** Halsey Jackson
1436 Dunham Street SE
Grand Rapids, MI 49506

Charge No: 23A-2026-01113

Halsey Jackson v 834 Design & Marketing

EEOC Representative and email: Yvonne Allen
State , Local & Tribal Program Coordinator
Yvonne.Allen@Eeoc.Gov

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 23A-2026-01113.

On behalf of the Commission,

Digitally Signed By:RAMIRO GUTIERREZ
08/03/2026

RAMIRO GUTIERREZ
DIRECTOR

**Cc:**
Kim Bode
1365 Plainfield Avenue NE
Grand Rapids, MI 49505

NA NA
1365 Plainfield Avenue NE
Grand Rapids, MI 49505

Please retain this Notice for your records.